**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                     )
JUDICIAL WATCH, INC.,                      )
                                                     )
                    Plaintiff,                       )
                                                     )
            v.                                        )          Civil Action No. 14-1511 (ABJ)
                                                     )
U.S. DEPARTMENT OF STATE,          )
                                                     )
                    Defendant.                     )
_____)

## MEMORANDUM OPINION

Plaintiff Judicial Watch, Inc. sent a Freedom of Information Act ("FOIA") request to defendant United States Department of State ("State Department") seeking records relating to notes or reports created in response to the September 11, 2012 attack on the United States Consulate in Benghazi, Libya.  Compl. ¶ 5 [Dkt. # 1].  In this lawsuit, plaintiff contends that the State Department withheld or redacted records without justification.  Defendant filed a motion for summary judgment on June 6, 2016.

The Court finds that defendant has demonstrated that only some of its withholdings were justified under FOIA Exemption 5.  Therefore, the Court will grant defendant's motion for summary judgment in part and deny it in part.

### BACKGROUND

**I.    The Request**

In a FOIA request dated June 13, 2014, Kate Bailey, on behalf of plaintiff, sought the following:

> Any and all records concerning, regarding, or related to notes, updates, or reports created in response to the September 11, 2012 attacks on the U.S. Consulate in Benghazi, Libya.  This request includes, but is not limited to,

notes taken by then Secretary of State Hillary Rodham Clinton or employees
of the Office of the Secretary of State during the attack and its immediate
aftermath.  The timeframe for this request is September 11–15, 2012.

Compl. ¶ 5;  Def.'s Statement of Material Facts as to Which There is no Genuine Dispute

[Dkt. # 31-3] ("Def.'s SOF") ¶ 1; Pl.'s Response to Def.'s SOF [Dkt. ## 33–34] ("Pl.'s Resp.

SOF") ¶ 1; Decl. of Eric F. Stein [Dkt. # 31-2] ("Stein Decl.") ¶ 4; Ex. 1 to Stein Decl.

The State Department's Office of Information Programs acknowledged receipt of

plaintiff's FOIA request on July 8, 2014.  Def.'s SOF ¶ 2; Pl.'s Resp. SOF ¶ 2.

## II.    Procedural History

The State Department did not respond to plaintiff's FOIA request within the statutorily-

required twenty-day period.  Compl. ¶ 7; *see* 5 U.S.C. § 552(a)(6)(A).  Plaintiff filed this lawsuit

on September 4, 2014, *see* Compl., and defendant answered on October 10, 2014.  Answer [Dkt.

# 6].  Over the course of the next year and a half, defendant produced documents to plaintiff until

it determined that it had completed processing plaintiff's FOIA request.  *See* Joint Status Report

[Dkt. # 29].

The State Department began a rolling production on December 17, 2014.  The first

production resulted in the identification of three documents responsive to plaintiff's request, but

defendant determined that all three had to be withheld in full.  Def.'s SOF ¶ 3; Pl.'s Resp. SOF

¶ 3; Ex. 3 to Stein Decl.  On February 11, 2015, the State Department released nine documents in

full and seven documents in part,  Def.'s SOF ¶ 4; Pl.'s Resp. SOF ¶ 4; Ex. 4 to Stein Decl., and

on April 8, 2015, the State Department released five documents in full and two documents in part.

Def.'s SOF ¶ 5; Pl.'s Resp. SOF ¶ 5; Ex. 5 to Stein Decl.

The State Department completed processing the final part of the request on June 3, 2015,

and released 306 documents in full and 62 documents in part, while withholding 9 documents in

full.  Def.'s SOF ¶ 6; Pl.'s Resp. SOF ¶ 6; Ex. 6 to Stein Decl.  At the same time, the State Department provided plaintiff with a link to 68 additional responsive records contained within the 30,000 emails former Secretary of State Hillary Clinton had provided to the State Department. Def.'s SOF ¶ 7; Pl.'s Resp. SOF ¶ 7; Ex. 6 to Stein Decl.  Out of those sixty-eight documents, forty were released in full and twenty-eight were released in part.  Def.'s SOF ¶ 7; Pl.'s Resp. SOF ¶ 7; Stein Decl. ¶ 9.  In total, defendant released 459 documents in whole or in part, and withheld 12 documents as exempt in their entirety.  *See* Status Report [Dkt. # 12] ¶ 4.

On November 2, 2015, the State Department completed a supplemental search of the 30,000 emails provided by former Secretary Clinton and released 1 document in full and 6 documents in part.  Def.'s SOF ¶ 8; Pl.'s Resp. SOF ¶ 8; Ex. 7 to Stein Decl.  And the State Department also searched materials obtained from former State Department employees Huma Abedin, Cheryl Mills, and Jacob Sullivan and released twelve documents in part on November 12, 2015, Def.'s SOF ¶ 9; Pl.'s Resp. SOF ¶ 9; Ex. 8 to Stein Decl., and twelve documents in full and three documents in part on November 30, 2015.  Def.'s SOF ¶ 10; Pl.'s Resp. SOF ¶ 10; Ex. 9 to Stein Decl.

On March 7, 2016, the State Department informed plaintiff that it had completed a search of electronic records from the Office of the Executive Secretariat and released one document in full and ten documents in part.  Def.'s SOF ¶ 13; Pl.'s Resp. SOF ¶ 13; Ex. 10 to Stein Decl.  After reviewing those materials, the State Department also produced four additional documents in full, eighteen documents in part, and withheld ten documents in full on April 7, 2016.  Def.'s SOF ¶ 14; Pl.'s Resp. SOF ¶ 14; Ex. 11 to Stein Decl.  Additionally, on June 6, 2016, the State Department

identified information within nine documents that were previously withheld in part or in full and provided that information to plaintiff.  Stein Decl. ¶ 14; Ex. 12 to Stein Decl.[1]

On June 6, 2016, defendant filed a motion for summary judgment contending that the agency's searches were adequate, and that the agency had properly withheld information under FOIA Exemptions 1, 3, 5, and 6.  Def.'s Mot. for Summ. J. [Dkt. # 31] ("Def.'s Mot."); Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 31-1] ("Def.'s Mem.") at 9–30.  Plaintiff filed a cross-motion for summary judgment on July 8, 2016, in which it also opposed defendant's motion, but only challenged the State Department's withholding of certain responsive records under FOIA Exemptions 1 and 5.[2]  Pl.'s Cross-Mot. for Summ. J. [Dkt. ## 33–34] ("Pl.'s Cross-Mot."); Pl.'s

---

[1]    In August 2016, the State Department also conducted a search of materials it received from the FBI and retrieved one document responsive to plaintiff's FOIA request.  *See* Notice Regarding Def.'s Search of Information Transferred from the FBI [Dkt. # 41] ¶¶ 2–3.  After conferring with defendant, plaintiff has agreed not to challenge the scope of the search for records transferred from the FBI.  *Id.* ¶ 4.  The State Department produced the responsive document to plaintiff with redactions taken pursuant to Exemptions 6 and 7(c), *id.*, and plaintiff informed the Court that it does not intend to challenge the propriety of these withholdings.  Joint Status Report [Dkt. # 42].

[2]    Although defendant moved for summary judgment on the adequacy of its searches, as well as on its withholding of certain information or whole documents under FOIA Exemptions 3 and 6, plaintiff does not challenge the adequacy of the searches or the withholdings under Exemptions 3 and 6.  Plaintiff states that it "has elected not to challenge [d]efendant's withholdings under FOIA Exemptions 3 or 6 . . . ."  Pl.'s Cross-Mem. at 10 n.1.  Therefore, defendant is entitled to summary judgment as to its withholdings under those exemptions.  As to the adequacy of defendant's searches, plaintiff "objects to the sufficiency of the State Department's searches," but plaintiff "does not ask the Court to duplicate the substantial work of the three other courts that are currently considering this same issue."  Pl.'s Cross-Mem. at 1, 9.  Defendant asserts that plaintiff has "failed to challenge any of the searches State *did* conduct" and it is therefore entitled to summary judgment.  Def.'s Cross-Opp. at 2–3 (emphasis in original).  In its cross-reply, plaintiff reiterates that it has "preserved its objections to [d]efendant's searches" and states that plaintiff "would not ask the Court to rule on the issue."  Pl.'s Cross-Reply at 12.  In other words, plaintiff is not actively challenging the adequacy of the State Department's searches in this particular case, and the Court does not need to decide whether the searches were adequate as a matter of law as part of its entry of summary judgment in this case.

Mem. of P. & A. in Opp. to Def.'s Mot. & in Supp. of Pl.'s Cross-Mot. [Dkt. ## 33–34] ("Pl.'s Cross-Mem.") at 10–17.

Defendant filed a reply in support of its motion for summary judgment, and in opposition to plaintiff's cross-motion for summary judgment on August 12, 2016.  Def.'s Reply in Supp. of Def.'s Mot. & Mem. in Opp. to Pl.'s Cross-Mot. [Dkt. ## 37–38] ("Def.'s Cross-Opp.").  Then, on August 24, 2016, plaintiff filed its reply to defendant's opposition, in which it narrowed its challenge only to certain withholdings under Exemption 5.[3]  Pl.'s Reply to Def.'s Cross-Opp. [Dkt. # 40] ("Pl.'s Cross-Reply") at 1.

Plaintiff challenges defendant's withholdings under Exemption 5's deliberative process privilege on the grounds that the government misconduct exception applies and that all documents withheld under this privilege should be produced.  Pl.'s Cross-Mem. at 10–12; Pl.'s Cross-Reply at 1–6.  Also, plaintiff challenges the withholding of information contained in two documents in particular, arguing that Exemption 5's deliberative process privilege simply does not apply to those documents.  Pl.'s Cross-Mem. at 15–17; Pl.'s Cross-Reply at 1, 7–12.

Pursuant to the Court's February 7, 2017 Order, defendant delivered the documents withheld under Exemption 5 to chambers for *in camera* inspection to assist the Court in making a responsible *de novo* determination.  *See Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978).

Based on the briefs and declarations submitted by the parties and the Court's *in camera* review of the records, the Court will grant defendant's motion for summary judgment in part and deny it in part.

---

3       In its cross-reply, plaintiff asserts that it "is satisfied that [d]efendant has now met its burden of proof on its Exemption 1 claims," and that the only remaining issues revolve around defendant's withholdings under Exemption 5's deliberative process privilege.  Pl.'s Cross-Reply at 1.  Therefore, defendant is also entitled to summary judgment as to its withholdings under Exemption 1.

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate.  *Weisberg v. DOJ*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted).  In assessing a party's motion, the court must "view the facts and draw reasonable

inferences 'in the light most favorable to the party opposing the summary judgment motion.'"

*Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"Summary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006). However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

### I.   Legal Standard

FOIA requires the release of government records upon request. Its purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."),

citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). Any "reasonably segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

## II.    Exemption 5 Withholdings

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). A document may be properly withheld under Exemption 5 only if (1) its source is a government agency, and (2) it falls "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8. The exemption encompasses "protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the executive "deliberative process" privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981). FOIA "places the burden on the agency to sustain the

lawfulness of specific withholdings in litigation." *Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9, (citations omitted), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

In this case, plaintiff challenges the withholding of certain State Department records as described in the *Vaughn* Index under Exemption 5.[4] Plaintiff maintains that these documents may shed light on government misconduct, and therefore, the deliberative process privilege is overcome by a government misconduct exception. Pl.'s Cross-Mem. at 10–12; Pl.'s Cross-Reply at 2–6. Also, plaintiff specifically challenges the withholding of the contents of two documents, C05739592 and C05739595, arguing that the information withheld is purely factual and not protected by the deliberative process privilege. Pl.'s Cross-Reply at 7–12.

---

4      Specifically, plaintiff challenges the withholdings in, or of, the following documents: C05739567; C05739592 and C05739595; C05739550 and C05701779; C057702034, C05702194, and C05948089; C05702163; C05702379; C05702417; C05702224; C05702259; C05702450; C05693227; C05693243; C05701893, C05702070, and C05702062; C05701840; C05701898; C05701725; C05701883; C05701998, C05702050, C05702051, and C05701884; C05701925; C05702026, C05702052, C05702067, C05702157, C05702193, C05702408, C05702411, C05702423, C05702434, and C05701963; C05702030; C05702057; C05702443 and C05702448; C05702452; C05702221; C05947966, C05947967, C05947978, C05947984, and C05948056; C05947981, C05947987, C05947992, C05948033, C04948040, C05948042, C05948044, C05948048, C05948052, C05948237, and C05948280; C05948268; C05948093, C05948242, and C05948269; and C05948265. *See* Pl.'s Cross-Mem. at 10–11.

A.    **The government misconduct exception does not apply to abrogate the deliberative process privilege in this FOIA case.**

With the exception of two specific documents, plaintiff does not challenge the State Department's characterization of the withheld documents or information as predecisional and deliberative.  Instead, plaintiff asks the Court to reject defendant's assertion of the deliberative process privilege as to all of the documents withheld under Exemption 5 because plaintiff contends the government has engaged in misconduct.  Specifically, plaintiff argues that the "State Department and Obama Administration clearly misled the public about the Benghazi attack," and that "there is a clear connection between the government misconduct and the records and material at issue."  Pl.'s Cross-Mem. at 12.  However, the Court is not persuaded that the misconduct exception is available in a FOIA case, and therefore, it does not need to go on to assess, based solely on the small subset of documents that have been provided to the Court in this case, whether there is evidence of the kind of extreme misconduct that might serve as an exception to the privilege in another situation.

In *In re Sealed Case*, a case involving the enforcement of a grand jury subpoena issued to the White House counsel's office, the D.C. Circuit observed that the deliberative process privilege "can be overcome by a sufficient showing of need."  121 F.3d 729, 737 (D.C. Cir. 1997).  As one example, it stated that "where there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'"  *Id.* at 738, quoting *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995).

But *In re Sealed Case* arose in the context of a criminal investigation, and the Court of Appeals "has never squarely applied [the government misconduct] exception" in the FOIA context.

*Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Housing & Urban Dev.*, 19 F. Supp. 3d 1, 13 (D.D.C. 2013).  Some courts in this district have cited *In re Sealed Case* and discussed the possibility that the exception would apply in FOIA cases where the claimed governmental misconduct is "severe enough to qualify as nefarious or extreme government wrongdoing."  *Id.* at 14; *see also Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 903 F. Supp. 2d 59, 66, 68–69 (D.D.C. 2012) (stating that the government misconduct exception may be invoked in the FOIA context, but concluding that the record did not reveal the extreme government wrongdoing that would prevent the defendant from invoking the deliberative process privilege); *ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F. Supp. 2d 130, 133–34 (D.D.C. 2008) (acknowledging the possible application of a government misconduct exception in a FOIA case, but declining to apply it absent some showing that consideration of the policy at issue was outside the agency's purview or that the agency had "nefarious purposes").  But plaintiff has not pointed the Court to any case in which a court in this district has ordered that deliberative materials be disclosed on those grounds.

On the other hand, at least one court in this district has rejected the notion that the concept discussed in *In re Sealed Case* would extend to the FOIA context.  *Wright v. Admin. for Children & Families*, No. 15-218, 2016 WL 5922293, at *11 (D.D.C. Oct. 11, 2016).  The court in *Wright* explained:  "[t]his reading of *In re Sealed Case* is in accordance with an understanding of the FOIA well-established in this Circuit: Exemption 5's protection of privileged materials is not subject to the same exceptions to which the common law privilege is susceptible."  *Id.*  The court went on: "the exemption protects from disclosure some materials that, if the common law privilege were at issue, might be disclosed pursuant to 'case-specific exceptions.'"  *Id.*, quoting *Stonehill v. IRS*, 558 F.3d 534, 539 (D.C. Cir. 2009); *see also Williams & Connolly v. SEC*, 662 F.3d 1240, 1244 (D.C.

Cir. 2011) (noting that under FOIA, a party's notes in a criminal trial still remain work product material protected by FOIA, even though "[i]n criminal trials, evidentiary privileges may give way for any number of reasons").

In this Court's view, the *Wright* decision flows directly from the ruling in *In re Sealed Case*, where the Court of Appeals specifically carved FOIA cases out of its general recognition that the deliberative process privilege could be overcome by a showing of need:  "[t]his characteristic of the deliberative process privilege is not an issue in FOIA cases because the courts have held that the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure."  *In re Sealed Case*, 121 F.3d at 737 n.5; *see also DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 771 (1989) ("[W]hether [disclosure] is *warranted* cannot turn on the purposes for which the request for information is made.") (emphasis in original).  Thus, the Court finds that the only applicable Circuit authority militates against recognizing a government misconduct exception in a FOIA case, and it will follow the analysis set out in *Wright*.  This means that the Court will enter judgment in favor of defendant for all records withheld on deliberative process grounds where the availability of the exemption is not in question.

> **B.     The withholdings pursuant to Exemption 5 within documents C05739592 and C05739595 were improper.**

Plaintiff challenges the withholding of eight short paragraphs within two emails,[5] claiming that the emails are not protected under the deliberative process privilege because they "appear[] to be pure reporting – for informational purposes only."  Pl.'s Cross-Reply at 7.

---

5       Documents C05739592 and C05739595 in the *Vaughn* index.  *See* Stein Decl. ¶ 58.

As set forth above, the deliberative process privilege "protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc.*, 449 F.3d at 151, citing *Coastal States Gas Corp.*, 617 F.2d at 866.  A document is predecisional if "'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Id.*, quoting *Coastal States Gas Corp.*, 617 F.2d at 866.

For a document to be predecisional, the agency does not have to "point to an agency final decision;" it may "merely establish what deliberative process is involved, and the role [] that the documents at issue played in that process." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000), citing *Formaldehyde Inst. v. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1123 (D.C. Cir. 1989).  In other words, a "'predecisional' document is one 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *Formaldehyde Inst.*, 889 F.2d at 1122, quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).  And with respect to the "deliberative" prong of the test, the exemption "protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982), citing *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63 (D.C. Cir. 1974).

The D.C. Circuit explained in *Mead Data Center, Inc.* that "[m]any exemption five disputes may be able to be decided by application of the simple test that factual material must be disclosed but advisory material, containing opinions and recommendations, may be withheld[;] . . . but courts must be careful not to become victims of their own semantics."  566 F.2d at 256, citing *Montrose Chem. Corp.*, 491 F.2d at 68–71.  The court underscored that exemption five "is intended to protect the deliberative process of government and not just deliberative material." *Id.*

13

> Perhaps in the great majority of cases that purpose is well served by
> focusing on the nature of the information sought. In some circumstances,
> however, the disclosure of even purely factual material may so expose the
> deliberative process within an agency that it must be deemed exemption by
> section 522(b)(5).

*Id.*

Defendant contends that it properly withheld eight identical paragraphs in two different emails, which were summaries of calls between the President of the United States and the Presidents of Libya and Egypt in the aftermath of the Benghazi attack. Def.'s Mem. at 26. The agency argues that, for purposes of whether or not the documents are "predecisional," what matters is the "intended use" of the summaries. Def.'s Cross-Opp. at 15–16, citing *Playboy Enters., Inc. v. DOJ*, 677 F.2d 931, 936 (D.C. Cir. 1982) (ordering disclosure of DOJ task force factual report that had been ordered to inform the Attorney General, which he in turn would make available to Congress). The State Department posits that the "intended use of the summaries [was] to provide information to senior officials to be used in their decision-making process about how to respond to a national security crisis." *Id.* at 16. As to the documents' deliberative nature, defendant asserts that the redacted information "reflects the author's opinion about which portions of the calls to include and how to summarize that information," and that revealing that information would disclose the deliberative process of the agency, which is "not required." *Id.* at 15–16.

Plaintiff argues that the summaries do "not appear to relate to any particular decision pending before the State Department at the time or in the future," and that "[t]here is no 'back and forth' or 'give and take' between officials," nor a "request for comment or input." Pl.'s Cross-Reply at 7. It asserts that the summaries appear "to be pure reporting – for informational purposes only." *Id.* Plaintiff points to the fact that the subject line of the email reads "Quick Summary of POTUS Calls to Presidents of Libya and Egypt," the email bears the annotation "FYSA," which it

claims is a common acronym for "For Your Situational Awareness," and the email was sent to Secretary Clinton with the annotation "FYI." *Id.* Plaintiff insists that these designations "refute[] any suggestion of careful analysis, deliberation or judgment." *Id.* at 8.

Plaintiff also points out that defendant's declaration states that "[t]he withheld information represents a selection of facts chosen for the purpose of advising high-level State officials about the calls between the President and foreign leaders," Pl.'s Cross-Reply at 8, citing Stein Decl. ¶ 58, but that it does not identify "any particular agency action or decision to which the email relates or in which the email played any role" and "makes no mention of the email being used to respond to a national security crisis." *Id.* at 9–10.  According to plaintiff, defendant's "generic assertion" that the intended purpose of the email was to provide information to senior officials to be used in their decision-making process about how to respond to a national security crisis "is not supported by the evidence." *Id.* at 10.  Plaintiff maintains that "the email's relation to any State Department deliberation[] is 'too attenuated to be protected by the deliberative process privilege.'"  *Id.* at 9, citing *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).

The Court finds that the two records, even if just barely predecisional, are not deliberative. Defendant has pointed to very little to support its characterization of these two records as deliberative, and the Court's *in camera* review of the documents reveals that they do not fall within that category.

The case law does not support defendant's argument that the mere selection of facts to be incorporated in a summary is enough in and of itself to satisfy the requirement that it be deliberative.  In *Montrose Chemical Corp.*, the Court of Appeals did apply the deliberative process privilege to summaries lawyers prepared for an EPA Administrator who was reviewing a Hearing Examiner's decision.  491 F.2d at 65, 71.  The staff attorneys summarized a record of over 9,200

pages, and the court was swayed by the fact that the EPA assistants "were exercising their judgment as to what record evidence would be important to the Administrator in making his decision . . . ."  *Id.* at 68.  But here, that element of sifting through and winnowing down a voluminous record with an eye towards what a decision-maker would find significant, *see id.*, is not present.

Moreover, it cannot be said that disclosure of these records would "so expose the deliberative process" that the exemption should apply.  *See Mead Data Cent.*, 566 F.2d at 256. The records do not emphasize, comment upon, or characterize events or facts; they simply summarize telephone calls and pass information on to State Department officials, without any indication that the information should prompt further action or bear upon a decision under review. While the Court recognizes that the information was transmitted to inform State Department officials of facts that could be relevant to the ongoing performance of their duties, the deliberative process privilege has not been interpreted to extend that broadly.  The agency has not articulated any principle that would justify withholding here that would not also justify the withholding of all factual summaries prepared in the ordinary course of agency business.  In the absence of the invocation of some other proper exemption, *see* Stein Decl. ¶ 58, these two records must be produced.

## CONCLUSION

For the reasons stated above, the Court finds that the misconduct exception cannot be invoked in this FOIA action to abrogate the deliberative process privilege, and that defendant improperly withheld the two challenged documents under Exemption 5.  Therefore, defendant's motion for summary judgment will be GRANTED IN PART, and DENIED IN PART, and

plaintiff's cross-motion for summary judgment will be GRANTED IN PART, and DENIED IN

PART.  Defendant is instructed to produce documents C05739592 and C05739595 to plaintiff.

     A separate order will issue.


                                              AMY BERMAN JACKSON
                                              United States District Judge

DATE:  March 20, 2017