UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
JUDICIAL WATCH, INC., )
)
        Plaintiff, )
)
    v. ) Civil Action No. 14-1511 (ABJ)
)
U.S. DEPARTMENT OF STATE, )
)
        Defendant. )
)

## MEMORANDUM OPINION & ORDER

Pending before the Court is defendant U.S. Department of State's motion pursuant to Federal Rule of Civil Procedure 59(e) for reconsideration of the Court's March 20, 2017 order granting in part and denying in part defendant's motion for summary judgment. Def.'s Mot. for Recon. & to Alter J. [Dkt. # 46] ("Def.'s Mot."). The Court previously concluded that two documents that defendant redacted pursuant to Freedom of Information Act ("FOIA") Exemption 5 were not exempt, and it ordered defendant to produce the two documents – C05739592 and C05739595 – to plaintiff. *See Judicial Watch, Inc. v. U.S. Dep't of State*, 241 F. Supp. 3d 174, 185–86 (D.D.C. 2017).

Now, the agency contends that the information withheld from those two documents is covered by FOIA Exemption 1: it was classified at the time defendant produced the redacted documents to plaintiff and when defendant filed its motion for summary judgment. Based on the Court's review of the State Department's supporting declaration, as well as the Court's previous review of the information sought to be withheld during an *in camera* inspection, the Court finds that the State Department failed to invoke Exemption 1 due to human error, and that disclosure of the redacted information would threaten national security. Therefore, the Court concludes that it

is appropriate to reconsider its prior ruling, and it has determined that the withheld material falls within the scope of FOIA Exemption 1. Accordingly, defendant's motion for reconsideration is granted, and defendant need not disclose the redacted information within C05739592 and C05739595 to plaintiff.

**BACKGROUND**

On September 4, 2014, plaintiff initiated this action against defendant under FOIA, seeking records relating to notes or reports created in response to the September 11, 2012 attack on the United States Consulate in Benghazi, Libya. Compl. [Dkt. # 1] ¶ 5. Over the next year and a half, defendant produced documents to plaintiff until it determined that it had completed processing the FOIA request. *See* Joint Status Report [Dkt. # 29].

On June 6, 2016, defendant moved for summary judgment, Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. [Dkt. # 31-1] ("Def.'s Mem."), and plaintiff filed a cross-motion for summary judgment one month later, in which it challenged the State Department's withholding of certain responsive records under FOIA Exemptions 1 and 5. Pl.'s Cross-Mot. for Summ. J. [Dkt. # 34] ("Pl.'s Cross-Mot."); Pl.'s Mem. of P. & A. in Opp. to Def.'s Mem. [Dkt. # 34] ("Pl.'s Cross-Mem."). Ultimately, plaintiff narrowed its challenge to withholdings under Exemption 5's deliberative process privilege on the grounds that the government misconduct exception applied. Pl.'s Reply to Def.'s Opp. to Pl.'s Cross-Mot. [Dkt. # 40] ("Pl.'s Cross-Reply") at 1–6.[1] Also, plaintiff specifically challenged the withholding of eight identical paragraphs in two different emails, which were summaries of calls between the President of the United States and the

---

1 In its cross-reply, plaintiff asserted that it was "satisfied that [d]efendant has now met its burden of proof on its Exemption 1 claims," and that the only remaining issues revolved around defendant's withholdings under Exemption 5's deliberative process privilege. Pl.'s Cross-Reply at 1.

Presidents of Libya and Egypt in the aftermath of the Benghazi attack, arguing that Exemption 5's deliberative process privilege simply did not apply to those documents. Pl.'s Cross-Mem. at 15–17; Pl.'s Cross-Reply at 1, 7–12; *see also* Def.'s Mem. at 25–26.

After an *in camera* review of the documents withheld or redacted under Exemption 5, the Court granted in part and denied in part both motions for summary judgment. *Judicial Watch, Inc.*, 241 F. Supp. 3d at 179. The Court concluded that the government misconduct exemption was inapplicable in FOIA cases, and that the two documents at issue were not exempt under Exemption 5's deliberative process privilege. *Id.* at 182–85. Therefore, the Court ordered plaintiff to produce the two documents to plaintiff. *Id.* at 185–86.

On April 17, 2017, defendant filed the pending motion, arguing that reconsideration is necessary "in order to permit [the State Department] to apply Exemption 1 to certain classified information which was previously withheld only pursuant to Exemption 5" in order to prevent compromising the nation's foreign relations or national security. Def.'s Mot. at 1–2. Defendant maintains that "[t]he inadvertent omission of the Exemption 1 assertion with respect to [the] two documents was the type of 'pure mistake' that can be remedied on reconsideration." *Id.* at 1. Plaintiff opposed the motion on May 1, 2017, arguing that defendant's failure to assert Exemption 1 was deliberate and part of a "contemporaneous effort by [d]efendant to avoid designating emails from Secretary Clinton's unofficial server as classified." Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. [Dkt. # 47] ("Pl.'s Opp.") ¶¶ 1, 3. On May 5, 2017, the State Department filed a reply. Def.'s Reply in Supp. of Def.'s Mot. [Dkt. # 48] ("Def.'s Reply").

**STANDARD OF REVIEW**

"Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of*

3

*Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001), citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004), quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008), quoting 11 C. Wright & A. Miller, Fed. Prac. & Proc. § 2810.1, 127–28 (2d ed. 1995). Rather, motions to alter or amend a judgment "are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law." *Hammond v. Kempthorne*, 448 F. Supp. 2d 114, 118 (D.D.C. 2006), quoting *Indep. Petroleum Ass'n of Am. v. Babbit*, 178 F.R.D. 323, 324 (D.D.C. 1998).

## ANALYSIS

As a general rule, an agency "must assert all exemptions at the same time, in the original district court proceedings." *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003), quoting *Maydak v. DOJ*, 218 F.3d 760, 764–65 (D.C. Cir. 2000). However, the D.C. Circuit has "avoided adopting a 'rigid "press it at the threshold, or lose it for all times approach" to . . . agencies' FOIA exemption claims.'" *Id.*, quoting *Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 581 (D.C. Cir. 1987). Rather, it has recognized certain situations in which an agency might raise exemptions for the first time on appeal. *See id.* at 700. Of particular relevance to defendant's motion for reconsideration, the Court of Appeals has "recognized that 'there could be circumstances where, through pure mistake, the [g]overnment attorneys had not invoked the correct exemption in the district court.'" *Id.*, quoting *Jordan v. DOJ*, 591 F.2d 753, 780 (D.C. Cir. 1978).

4

> [I]f the value of the material which otherwise would be subject to disclosure were obviously high, e.g., confidential information compromising the nation's foreign relations or national security, and it appeared highly likely [it] was intended to be protected by one of the nine enumerated exemptions, then . . . the appellate court would have discretion to "remand the cause and require such further proceedings to be had as may be just under the circumstances."

*Id.*, quoting *Jordan*, 591 F.2d at 780 (internal citation omitted). So long as the government's failure to invoke the proper exemption was a result of "human error" and "was not an effort to gain a tactical advantage," and the government has "taken steps to ensure that it does not make the same mistake again," the case will be remanded to the district court to consider the applicability of the newly raised exemption. *Id.* at 701–02.

The D.C. Circuit has not provided any explicit guidance on the question of whether to accept an agency's belated assertion of a FOIA exemption on a motion for reconsideration. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1119 (D.C. Cir. 2007) (suggesting that invocation of a new exemption on reconsideration is "proper," based on "logic underlying [the Circuit's] cases . . ., at least where the district court chooses to entertain the new argument," because the district court "is vested with a large measure of discretion in deciding whether to grant" a motion for reconsideration), quoting *Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988); *see also Citizens for Responsibility & Ethics in Wash. v. DOJ*, 854 F.3d 675, 680 (D.C. Cir. 2017) (recognizing that there are exceptions to the general rule that the government must assert all exemptions at the same time, but rejecting the government's attempt on remand after appeal in the absence of an explanation for its initial failure to do so).

As other courts in this district have noted, "a district court retains the discretion" to determine whether "an untimely assertion has been forfeited" on reconsideration. *See, e.g., Shapiro v. DOJ*, No. 13-555, 2016 WL 3023980, at *4 (D.D.C. May 25, 2017); *Cuban v. SEC*, 795 F. Supp. 2d 43, 61–63 (D.D.C. 2011) (permitting agency to advance a new exemption in light of

5

the importance of protecting information in the report); *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 319 F. Supp. 2d 32, 34–35 (D.D.C. 2004) (denying motion for reconsideration because the government offered "no explanation for its failure to raise the presidential communications privilege prior to the Court's ruling on all of the parties' motions for summary judgment"). One court in this district has observed that on reconsideration,

> [b]asic principles of fairness, efficiency, and finality, moreover – principles inherent in the rules of civil procedure that apply with extra force in the context of FOIA litigation – counsel in favor of requiring the government to make some threshold showing of good cause to avoid a finding of forfeiture. Such a showing need not be an onerous requirement. The government might in some cases argue that its failure to raise a FOIA exemption earlier was an inadvertent error, or that some intervening change in law or fact excuses it, or that the consequences of not permitting an untimely assertion would be "dire"; indeed, the reasoning employed in *August* and *Maydak* supports exactly these arguments.

*Shapiro*, 2016 WL 3023980, at *4, first citing *August*, 328 F.3d at 700; then citing *Maydak*, 218 F.3d at 767.

In light of all of these authorities, and in particular, the fact that the national security exemption is involved, the Court finds it appropriate to review this issue now.

**I.  The Court will reconsider its prior ruling.**

Turning to the two documents that the agency seeks to keep redacted, the State Department has described the information contained within them in detail, and it has explained the reasons why the agency failed to assert Exemption 1 originally. *See* Decl. of Eric F. Stein [Dkt. # 46-2] ("Stein Decl."). The Court finds that the State Department failed to invoke Exemption 1 due to pure human error, and that disclosure of the redacted information would threaten national security. Therefore, the Court concludes that it is appropriate to reconsider its prior ruling.

Documents C05739592 and C05739595 are email chains that contain an email message dated September 13, 2012, from Denis R. McDonough to three high-level State Department

officials ("McDonough email"). Stein Decl. ¶ 4. The McDonough email contains summaries of two separate calls between the President of the United States and the Presidents of Libya and Egypt. *Id.* The McDonough email was part of another email chain produced in this case, document C05702404, which was redacted as classified pursuant to Exemption 1. *Id.* ¶ 5. The State Department's declarant explained that the important national security interests that prevented disclosure of the McDonough email within C05702404 "appl[y] with equal force to the text as it appears in documents C05739592 and C05739595." *See id.* ¶¶ 6–7. He observed that certain information withheld dealt with the "security situation in Egypt, including discussions with foreign government officials conducted with an implicit expectation of confidentiality." *Id.* ¶ 6. He stated that disclosure of that information could hurt foreign relations and lead to foreign officials being less willing to "furnish information important to the conduct of U.S. foreign relations." *Id.* Further, disclosure could "inject friction into, or cause serious damage to, a number of [] bilateral relationships with countries whose cooperation is important to U.S. national security, including some in which public opinion might not currently favor close cooperation with the United States." *Id.*

The State Department's declarant also averred that the documents "should have [been] marked . . . as classified" and that this "oversight occurred because of a confluence of unique circumstances related to the processing of emails provided to the Department by former Secretary of State Hillary Rodham Clinton." Stein Decl. ¶ 9. Specifically, C05739592 and C05739595 were among the emails provided by former Secretary Clinton in response to a request from the Department of State, while C05702404, because it does not contain any email messages to or from Secretary Clinton, was not part of the emails provided to the State Department by her. *Id.* ¶ 10. Documents C05739592 and C05739595 were responsive to requests of the House Select

7

Committee on Benghazi, and were originally compiled and reviewed in response to congressional requests. *Id.* ¶ 11. The documents were then reviewed for exempt information in this case and were produced with the same redactions as the versions given to Congress. *Id.* ¶¶ 11–12. In comparison, document C05702404 was received from a different custodian and reviewed by a different FOIA team, and it was produced a few weeks after C05739592 and C05739595. *Id.* ¶ 13. The information in C05702404 was redacted pursuant to Exemption 1 because of its classified content, and the information redacted in C05739592 and C05739595 is the same as the information redacted in C05702404. *Id.* ¶¶ 12–13.[2] Moreover, the redacted information within all three documents had been classified as of May 15, 2015, which was before the documents had been produced to plaintiff. *Id.* ¶¶ 3, 6, 11, 13.

According to the State Department's declarant, this mistake occurred because the agency "was facing enormous time pressure to produce approximately 30,000 Clinton emails to the public on its website and laboring under a very heavy FOIA workload at the time." Stein Decl. ¶ 14. As a result, "there was little opportunity for coordination across the teams processing different FOIA requests involving Secretary Clinton's emails at that specific time, and the differences in redactions and exemptions asserted amongst the three documents went unnoticed." *Id.* Further, during the time period when the agency was producing the declaration and narrative *Vaughn* index in this case, there had been a leadership change in the Office of Information Programs and Services ("IPS") the month before, and there was a "new vacancy in a critical manager position with

---

2    The State Department noted that one sentence, which was not part of the call summaries, was withheld from the McDonough email in document C05702404 but was not withheld pursuant to Exemption 5 from documents C05739592 and C05739595. Def.'s Mot. at 5 n.4, citing Stein Decl. ¶ 8 n.2. Because the agency has publicly released that sentence, it does not seek to withhold it now, and that sentence remains unredacted in the copies of C05739592 and C05739595. *Id.*, citing Stein Decl. ¶ 8 n.2

oversight of FOIA litigation cases in IPS." *Id.* Although the Court does not excuse defendant's lack of organization, it recognizes that the agency "has been taking steps to ensure better coordination when documents are reviewed and produced in response to FOIA requests." *Id.* ¶ 15. Specifically, the State Department has increased its use of "text mining," to allow employees to determine if a document has previously been reviewed in the same case or a different case, and it has introduced new tools to enable searches of document collections in order to avoid duplicates. *Id.*

In light of the substantiation of the important national security interests at stake, it does not appear that the agency's failure to invoke Exemption 1 was part of an effort to gain a tactical advantage, but rather, that it stemmed from inefficiencies at and extraordinary burdens placed upon defendant's FOIA unit. *See August*, 328 F.3d at 701. Plaintiff argues that defendant deliberately failed to invoke Exemption 1 in order to protect the agency's interests, which included avoiding "designating emails from Secretary Clinton's unofficial server as classified." Pl.'s Opp. ¶¶ 1, 3, 6. But this argument is unpersuasive because the agency had already classified the information at issue on May 15, 2015. *See* Stein Decl. ¶ 6. And, as plaintiff concedes, the agency redacted the same material from another document produced in this case. *See* Pl.'s Opp. ¶ 1 ("The only material difference in the emails is the sources – Secretary Clinton's unofficial server or the official server.").

Because the State Department's failure to raise FOIA Exemption 1 at the outset of the proceedings resulted from human error, because disclosure of the information would pose a significant risk to national security, and because the agency has taken steps to ensure that it does not make the same mistake again, the Court will reconsider its ruling concerning the production

9

of C05739592 and C05739595, and it will address whether the State Department's redactions are proper under FOIA Exemption 1.

## II.  Exemption 1 applies to the redactions in documents C05739592 and C05739595.

Plaintiff does not appear to challenge defendant's assertion of Exemption 1 to C05739592 and C05739595, just as it did not challenge the application of Exemption 1 to the same information withheld in document C05702404. *See generally* Pl.'s Opp.; *see also* Pl.'s Cross-Reply at 1 (stating that defendant had "met its burden of proof on its Exemption 1 claims" and that plaintiff was no longer challenging defendant's redactions under that exemption). In any event, the Court is independently satisfied that Exemption 1 applies to the redacted information.

FOIA Exemption 1 provides that matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are in fact properly classified pursuant to such Executive order" are exempt from production under FOIA. 5 U.S.C. § 552(b)(1). The D.C. Circuit has "consistently deferred to executive affidavits predicting harm to the national security, and [has] found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003). "The [agency's] arguments need only be both 'plausible' and 'logical' to justify the invocation of a FOIA exemption in the national security context." *ACLU v. DOD*, 628 F.3d 612, 624 (D.C. Cir. 2011); *see also Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) ("[T]he text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified.").

Here, the State Department has provided the declaration of Eric Stein, which puts forth plausible and logical explanations in support of the agency's invocation of Exemption 1. The declarant averred that the information was classified on May 15, 2015, pursuant to Executive Order

13,526, which classifies information that could reasonably be expected to cause harm to national security. *See* Stein Decl. ¶¶ 6–8. Moreover, the Court conducted an *in camera* review of the documents prior to its ruling on the motions for summary judgment, and it is satisfied that the redacted information is properly classified pursuant to FOIA Exemption 1.

After asserting and explaining the use of particular exemptions, an agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see also Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002). Just as with the exemption analysis, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman*, 494 F.3d at 1117, citing *Boyd v. Criminal Div. of DOJ*, 475 F.3d 381, 391 (D.C. Cir. 2007), and "[a] court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008), citing *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). A district court must make an express finding on segregability. *Id.* at 60, citing *Morley*, 508 F.3d at 1123.

The State Department's declarant explained that the agency "conducted a line-by-line review of [C05702404] and determined there is no additional information that can be reasonably segregated for release." Stein Decl. ¶ 6. Since he also averred that this "explanation applies with equal force to the text as it appears in documents C05739592 and C05739595," *see id.* ¶ 7, and this was borne out by the Court's *in camera* review, the Court finds that the State Department has met its segregability obligation.

**CONCLUSION**

For the foregoing reasons, the Court finds it appropriate to reconsider its ruling on the parties' motions for summary judgment. Defendant's Motion for Reconsideration [Dkt. # 46] is **GRANTED**, and the Court **ALTERS** its Order of March 20, 2017 as follows: The Court concludes that documents C05739592 and C05739595 contain classified information and that the documents are properly redacted pursuant to FOIA Exemption 1. Therefore, defendant need not disclose the redacted portions of the documents to plaintiff.

**SO ORDERED**.

/s/ Amy B. Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: October 24, 2017